Y. D. ROBINSON V. STATE.

No. 25136. March 7, 1951.
Motion for Rehearing Denied April 18, 1951.

Hon. Frank Ikard, Judge Presiding.

*Allen, Locke & Kouri,* and *Charles D. Butts,* Wichita Falls, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of Barbara Jean Roberts, and the jury assessed his punishment at death in the electric chair.

The deceased was a 21-year-old Negro girl, who had been reared in Wichita Falls where she lived with her parents. She had been married, but was divorced. She was described as being 5 feet tall and weighing 95 pounds.

Appellant, also a Negro, was a sergeant stationed at Sheppard Air Force Base near Wichita Falls. He was married.

On March 8, appellant's wife came to Wichita Falls on a

visit, and after spending the night with appellant at a house located at 705 Waco Street, she boarded the train to return to her home in Illinois about 3:45 the following afternoon.

After taking his wife to the train, appellant drove in his Buick convertible car to the Milam Hotel where the deceased was employed and picked her up. After leaving two of her friends at a dentist's office, the deceased and appellant drove to the Cozy Inn Cafe where they remained from about 4 P.M. until about 6:30 or 7 P.M.

During this time, the state's evidence is that they quarreled and were arguing, and that while they were having a few drinks, their attitude was distinctly unfriendly. Some of the state's evidence indicates that the deceased was mad and said that she was through with appellant apparently because of her having learned that he was married and that his wife had been there and appellant remarked: "No woman quits me like that." Other evidence was to the effect that appellant was threatening the deceased and accusing her of "trifling" on him, and that he threatened her by placing his finger between her eyes and saying that he was going to put a bullet right there.

Leaving the cafe, appellant drove the deceased to the house on Waco Street where they had spent much time together.

Appellant had in his possession a .45 Service Automatic pistol, which was shown to have been missing from the Air Force Base.

The deceased, after entering the house, was engaged in conversation with Ruby Lee Banks in her bedroom when appellant came in with the pistol and told the deceased to "Shut up" and was heard to say "Don't you believe I will shoot you?" At this time he was holding the pistol against the forehead of the deceased, and after the deceased had replied no she did not, the pistol was fired.

After pointing the pistol toward the witness Ruby Lee Banks and telling her not to tell anyone, even her boy friend, about the killing appellant placed the body of the deceased in his car, mopped the floor, and put the bucket and mop he had used in the car, picked up the shell and the bullet which had gone through the deceased's head, and drove to a point some one-half mile outside of the limits of the city of Wichita Falls to a point on a lonely dead-end country road and left the body in

the high grass and weeds. He also left nearby the bucket and mop.

The pistol he took apart and threw the pieces away at various points, the part bearing the serial number being thrown in an outdoor toilet where it was afterwards recovered.

The body was not found until about noon on Saturday following the killing on Thursday evening. During that time, appellant inquired of her parents as to the deceased's whereabouts, denied any knowledge thereof when questioned, visited his usual haunts and engaged in drinking with his friends, and explained some blood seen on his car as being blood from a rabbit he had killed.

Appellant denied all testimony to the effect that there was any argument or animosity between him and the deceased or that he had threatened her.

He testified that he took the gun out of his car and into the house where he had been staying with the intention of leaving it in a bureau drawer, and that it was accidentally discharged while he was playing with it.

He attributed his conduct in disposing of the body and his efforts to destroy the evidence to the fact that he "was scared."

We find no error shown by the bills of exception relating to the state's proof, and the district attorney's statement that appellant was a married man and that his wife visited him a few hours before the killing. Such fact was admissible as a part of the res gestae, and was relevant on the question of motive. Also appellant testified to the same effect.

Bills Nos. 3, 6, 8, 11, 15 and 16 to 22 inclusive complain of various remarks of the district attorney.

Bill No. 3 was prepared and filed by the court following refusal to approve a bill on the same subject submitted by appellant.

The court's bill shows that the objection was sustained, the jury instructed not to consider the remarks of counsel, and also that no exception was taken to the remarks or to the court's ruling. Therefore no error is shown by this bill.

Bills Nos. 6, 8, 11, 15, 19, 20 and 22 are also insufficient on one or more grounds stated in overruling Bill No. 3, and are overruled.

Bill No. 16 complains that during the cross-examination of appellant, state's counsel remarked "Your attorney has finished making the objection, you can answer the question now if you want to."

No request was made to have the jury instructed to disregard the remark, and we are not impressed with the seriousness thereof.

Bills Nos. 17 and 18 relate to the following occurrence:

After appellant had testified that he could not remember whether or not he pulled back the hammer of the .45 automatic pistol before he pulled the trigger, and that he could not remember having previously sworn that he did not pull the hammer back, appellant then testified he guessed he had so previously testified, and finally he testified he did remember pulling the hammer back.

Also appellant then denied that he had wrapped the body of the deceased in a sheet and blanket.

The district attorney then asked appellant if he had previously told the district attorney that the body was so wrapped, and asked him if he did not want to be honest with the jury.

Appellant, at this time, objected and requested the court to instruct the jury not to consider the district attorney's remarks on the grounds of their being prejudicial and inflammatory.

Before the court could rule on the matter, the district attorney remarked to the court that he had a right to ask the question and that there was nothing reprehensible or improper about it unless defense counsel did not want appellant to be honest.

Counsel for appellant, before the court could rule on the former objection, objected to the last remark of the district attorney as being unfair and prejudicial.

Both attorneys stated that their remarks were addressed to the court, the district attorney in connection therewith fur-

ther remarking that he did not know why counsel did not want him to ask the defendant to be honest.

The court overruled the objection, and the question was not answered nor again propounded.

These bills, as certified in lieu of appellant's refused bills, show a series of objections beginning with the objection to an unanswered question. The remarks of the district attorney do not impress us as being prejudicial or inflammatory, nor the entire episode as being of a nature requiring a reversal.

Bill No. 21 complains that appellant was asked on cross-examination if it hurt him back in 1942 when he lied and went to the penitentiary for it.

The bill, as prepared by the court in lieu of appellant's refused bill, sets out that appellant's objection was that the district attorney was going into the details of the 1942 offense. It is also shown that appellant had testified without objection that it bothered and hurt him to lie, and that he had lied to the father of the deceased the evening of the killing when he said that he had not seen the deceased and did not know where she was.

The objection that the question amounted to going into the details of the 1942 offense first brought out by appellant was properly overruled, and reversible error is not shown by this bill.

Bill No. 4 complains of a question propounded to Mrs. Rhuba Houston wherein she was asked as to whether or not appellant's and deceased's manner toward each other was distinctly unfriendly. The objection was that a conclusion was called for, and that the question was prejudicial and inflammatory.

The bill shows that the objection was overruled, and that the question was answered in the affirmative. The bill is insufficient to show that the testimony elicited was inadmissible as a description in general terms of the emotions based upon the conduct and demeanor of the parties observed by the witness. See 19 Tex. Jur. 369, Sec. 238.

The bill fails to show lack of proper predicate for the introduction of such testimony from this witness, and we find from the statement of facts that she had qualified herself to give

the testimony complained of in this bill. The witness testified to her acquaintance and friendship with the deceased and appellant and her observation of them on this occasion as compared with other meetings.

Bill No. 14 recites that while cross-examining appellant, state's counsel went into details of his family life and whether or not his wife received an allotment. Appellant objected on the ground that such was immaterial and solved no issue in the case, and the objection being overruled, exception was reserved.

It is not shown what testimony was elicited by the state, no answer being shown.

The bill is deficient and shows no error. See 4 Tex. Jur. 307, Sec. 214.

It is urged that reversible error is shown in the overruling of appellant's exceptions to the court's charge on appellant's defense that the shooting was accidental. The contention made is that the charge given is not an unconditional affirmative submission of his defense applying all facts in the case.

The jury was instructed that homicide is excusable when the death happens by accident, and was applied to the facts by an instruction to the effect that if appellant accidentally discharged the gun he should be acquitted, reasonable doubt being properly included.

Also the jury was instructed to acquit upon a reasonable doubt that appellant (1) intended to kill the deceased, or (2) knew that the gun was loaded, or (3) knew there was a cartridge in the chamber, or (4) knew the safety was off.

Having instructed the jury to acquit if they found that the killing was by accident in any of the ways suggested by appellant's testimony, we are unable to agree that the charge is erroneous in the particulars mentioned.

Bills 26, 29 and 30 inclusive complain that appellant should have been granted a new trial because of prejudicial and inflammatory remarks of the district attorney in his closing argument to the jury.

These bills are insufficient to present reversible error for the reason that they fail to show that the complained-of argu-

ment was not made in reply to or provoked by arguments of appellant's counsel. See Baggett v. State, 154 Tex. Cr. R. 618, 229 S.W. 2d 801, Trammel v. State, 155 Tex. Cr. R., 173, 232 S.W. 2d 719.

Bill No. 27 relates to the opening argument of state's counsel wherein the following language was used:

"Not one word do you hear from the Defendant that she (meaning the deceased) was anything but an honorable girl; if she had been a bad, vicious woman, and if he had a right to kill her, they would have proved it by witness against her, but no, he sought the kind of girl she was in her education and her training, but they objected, and you don't hear the testimony."

The bill complains of all of the quoted remarks and the overruling of his objection thereto.

We see no error in the argument to the effect that if the deceased had been a vicious woman they would have proved it.

The bill complaining of the argument a part of which is proper is insufficient to present reversible error.

Bill No. 28, as prepared by the trial court, shows that no exception was reserved to the remarks complained of, and that the jury was instructed not to consider the remarks. No error is shown by this bill.

Bill No. 31, as prepared by the trial court, complains that the parents of the deceased during the arguments came inside the bar of the court and sat down inside the rail.

Upon objection, the parents left their seats inside of the rail, and remained seated among the audience throughout the remainder of the trial.

These parties had both testified before the jury and the jury knew that they were the parents of the deceased.

There was no disturbance or remarks in regard to this episode which would attract the jury's attention, and the objection was not heard by the jury.

The trial court did not abuse his discretion in overruling

appellant's motion for new trial based upon the matters complained of in this bill.

Appellant urges that misconduct of the jury was shown, and his conviction should be reversed for failure of the trial court to grant his motion for new trial upon that ground.

In his motion, appellant alleged that during the deliberations of the jury, and prior to their having agreed upon the punishment to be assessed, that the foreman of the jury, Carl Palmer, said that "if we gave the defendant life he would get out in a few years and would not have to serve it, that is, all of his life, and if we changed our vote to death—that the higher court or judge would change the sentence to life and he would have to serve it."

It was further alleged that an unidentified juror, during such deliberations, made the statement "what would they (meaning the audience of Negroes) think of us out there if we gave him less than death."

It was also alleged that the juror Palmer, during such time, made the statement that murderers were getting out too light in Wichita County, and that the Bourland case, a recent case tried in said county, was discussed as a case in which the punishment was too light.

The motion for new trial on such grounds was supported by the affidavit of the juror Stean Collier, who testified on the hearing of the motion.

Mr. Carl Palmer, the foreman of the jury, testified on the hearing and denied that he made the statements attributed to him.

Eleven of the jurors testified on the hearing all of whom denied hearing the statements attributed to the foreman, except the juror Collier.

A fact issue was thus made as to this allegation, which was for the trial court to decide.

Also the evidence as to the remaining allegations of misconduct was conflicting.

Having overruled the motion for new trial, we must con-

clude that the trial court found from the disputed evidence that the alleged misconduct did not occur. And we are unable to agree that an abuse of discretion of the trial court is shown.

Other bills of exception have been considered and are overruled.

The evidence is sufficient to sustain the verdict of the jury, and no reversible error appears.

The judgment is affirmed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant treats at length the complaint raised in his Bill of Exception No. 6. We have reconsidered this bill, together with all others, and have reached the conclusion that they were properly disposed of in the original opinion. We have further examined the record and find no error requiring a reversal of the case.

The appellant's motion for rehearing is overruled.